JOHNSON & WEAVER, LLP
FRANK J. JOHNSON (SBN 174882)
frankj@johnsonandweaver.com
600 West Broadway, Suite 1540
San Diego, CA 92101
Telephone: (619) 230-0063
Facsimile: (619) 255-1856

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN (SBN 310266)
scotth@johnsonandweaver.com
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: (212) 802-1486
Facsimile: (212) 602-1592

*Attorneys for Plaintiff*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORGE E. ROLLINS, Individually and on Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| INVENSENSE, INC., BEHROOZ ABDI, AMIR FAINTUCH, USAMA FAYYAD, EMIKO HIGASHI, JON OLSON, AMIT SHAH, ERIC STANG, YUNBEI "BEN" YU, TDK CORPORATION, and TDK SENSOR SOLUTIONS CORPORATION, | DEMAND FOR JURY TRIAL |
| Defendants. | |

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff George E. Rollins ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, alleges: (i) violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"); 17 U.S.C. § 78n(a); and Rule 14a-9 promulgated thereunder, 17 C.F.R. 240.14a-9; and (ii) and violations of Section 20(a) of the Exchange Act, 17 U.S.C. § 78t(a).  Plaintiff's allegations are based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission (the "SEC") filings and other publicly available information.

## SUMMARY OF THE ACTION

1. This is a class action brought on behalf of the stockholders of InvenSense, Inc. ("InvenSense" or the "Company") against InvenSense, its board of directors (the "Board" or the "Individual Defendants," and with InvenSense, the "InvenSense Defendants"), TDK Corporation ("TDK"), and TDK subsidiary TDK Sensor Solutions Corporation ("Merger Sub," and with TDK, the "TDK Defendants").[1]

2. On December 21, 2016, InvenSense and TDK announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), under which TDK, through Merger Sub, plans to acquire all of the outstanding shares of InvenSense common stock for $13.00 per share in cash, or a total of approximately $1.3 billion (the "Acquisition").  The parties have agreed to complete the Acquisition "as soon as possible," and InvenSense's Board members, along with InvenSense's officers, have a strong financial interest in the Acquisition, as they stand to earn a substantial payout from both unvested and vested (but illiquid) equity awards.  Moreover, the Company's management stand to receive additional special consideration flowing from lucrative post-close arrangements with TDK.  InvenSense insiders are, therefore, highly incentivized to complete the Acquisition.

---

[1] InvenSense, the Individual Defendants, and the TDK Defendants are collectively referred to as "Defendants."

-1-

3. The Acquisition is conditioned on, among other things, approval by a majority of shares of InvenSense's common stock.

4. On March 10, 2017, to induce the Company's minority stockholders into supporting the Acquisition, the Individual Defendants caused InvenSense to file a materially misleading Schedule 14A Proxy Statement (the "Proxy Statement") with the SEC, thus violating the federal securities laws governing stockholder communications.

5. The Proxy Statement misleadingly touts financial analyses performed by Qatalyst Partners LP ("Qatalyst"), the Company's financial advisor, as supporting the fairness of the $13.00 per share deal price. In support of its so-called "fairness opinion" on the Acquisition, Qatalyst performed a DCF analysis, which uses projected future financial information to ascertain an implied present-day value and is uniformly recognized by courts and financial experts as the most meaningful valuation analysis. Qatalyst's DCF analysis, which was based on InvenSense's management-created financial projections for fiscal years 2018 to 2022, implied a range of values for the Company's common stock of approximately $11.61 to $19.63 per share. The $13.00 per share Acquisition price is well below the midpoint and toward the bottom end of Qatalyst's DCF range.

6. Qatalyst took a questionable, unusual approach in performing its DCF analysis by "applying a dilution factor of approximately 19%, *as projected by the Company's management*, to reflect the dilution to current Company stockholders over the projection period due to the effect of future issuances by the Company of equity awards . . . ."

7. The problem with Qatalyst's approach is that the 19% dilution figure by management is bogus. Since completing its initial public offering ("IPO"), InvenSense's share count has increased by an average of only less than 4% per year. Moreover, for each of the past several years, the Company has issued equity awards representing far less than 19% of InvenSense's public float. Further, given the Company's own assumptions regarding terms of options grants, future issuances will have almost no dilutive effect during the projections period. To assume 19% dilution from "future issuances by the Company of equity awards" is objectively and subjectively unreasonable.

8. As a result of management's specious dilution estimate, coupled with Qatalyst's clever financial engineering (detailed herein), InvenSense stockholders were misled into believing that the Acquisition was fair when, in fact, it seriously undervalues the Company and its long-term prospects. Indeed, if InvenSense management had given Qatalyst a more reasonable dilution estimate of dilution, the resulting DCF analysis would have shown that the $13.00 per share Acquisition price, in fact, is *not* fair.

9. By falsely conveying that the Acquisition is fair, and by touting Qatalyst's financial analyses as supporting the Acquisition, Defendants are trying to deceive InvenSense stockholders into voting for the Acquisition based upon misinformation. As a result, Plaintiff and the rest of the Class members stand to suffer irreparable harm. Plaintiff, therefore, seeks injunctive and other equitable relief.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

11. This Court has personal jurisdiction over all Defendants because they are all either a corporation that conducts business in and maintains operations in this District, or an individual who has sufficient minimum contacts with the State of California so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because InvenSense's headquarters is located in this District.

## PARTIES

13. Plaintiff was at all relevant times a stockholder of InvenSense.

14. Defendant InvenSense is a San Jose, California-based company that develops and markets special sensor platforms for use in a wide variety of electronics. The Company's stock trades on the New York Stock Exchange under the ticker symbol "INVN."

-3-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

15. Defendant Behrooz Abdi ("Abdi") has been a member of the Board since June 2011, and since October 2012, he has served as InvenSense's President and Chief Executive Officer.

16. Defendant Amir Faintuch ("Faintuch") has been a member of the Board since October 2014. Faintuch is also a member of the Board's Nominating and Corporate Governance Committee.

17. Defendant Usama Fayyad ("Fayyad") has been a member of the Board since January 2015. Fayyad is also a member of the Board's Compensation Committee.

18. Defendant Emiko Higashi ("Higashi") has been a member of the Board since October 2014. Higashi is also a member of the Board's Audit Committee.

19. Defendant Jon Olson ("Olson") has been a member of the Board since October 2011. Olson is also the Chairman of the Board's Audit Committee.

20. Defendant Amit Shah ("Shah") has been a member of the Board since April 2004, and he currently also serves as Chairman of the Board. Shah is also the Chairman of the Board's Compensation Committee.

21. Defendant Eric Stang ("Stang") has been a member of the Board since September 2013. Stang is also the Chairman of the Board's Nominating and Corporate Governance Committee and a member of the Board's Audit Committee.

22. Defendant Yunbei "Ben" Yu ("Yu") has been a member of the Board since March 2008. Yu is also a member of the Board's Compensation Committee.

23. Defendant TDK is a company organized under the laws of Japan. TDK holds itself out as a "leading electronics company," and its portfolio includes electronic components, modules and systems marketed under the product brands TDK and EPCOS, power supplies, magnetic application products as well as energy devices, flash memory application devices, and others.

24. Defendant Merger Sub is a Delaware corporation and a wholly owned subsidiary of TDK that was formed for the sole purpose of effectuating the Acquisition.

-4-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

25. Defendants Abdi, Faintuch, Fayyad, Higashi, Olson, Shah, Stang, and Yu are collectively referred to as the "Individual Defendants" or the "Board." InvenSense and the Board are collectively referred to as the "InvenSense Defendants." TDK and Merger Sub are collectively referred to as the "TDK Defendants." The InvenSense Defendants and the TDK Defendants are collectively referred to as "Defendants."

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action individually and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all public holders of InvenSense common stock who are being, and will be harmed, by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendants. This action is properly maintainable as a class action under Fed. R. Civ. P. 23 for the reasons set forth below.

27. The Class is so numerous that joinder of all members is impracticable. According to the Proxy Statement, as of January 13, 2017, there were 94,541,023 shares of InvenSense common stock issued and outstanding.

28. There are questions of law and fact which are common to the Class, including:

    (a) Whether the Proxy Statement misrepresented or omitted material information;

    (b) Whether, as a result of the materially false or misleading or inadequate Proxy Statement, Defendants have acted in violation of Section 14(a) of the Exchange Act, 17 U.S.C. § 78n(a), and Rule 14a-9 promulgated thereunder, 17 C.F.R. 240.14a-9;

    (c) Whether the Individual Defendants are liable as control persons under Section 20(a) of the Exchange Act, 17 U.S.C. § 78t(a);

    (d) Whether TDK is liable as a control person under Section 20(a) of the Exchange Act, 17 U.S.C. § 78t(a); and

    (e) Whether Plaintiff and the other members of the Class face irreparable harm or other injury as a result of Defendants' misconduct.

29. Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff is not subject to any atypical defenses.

30. Plaintiff is an adequate representative of the Class, has no interests adverse to the Class, is committed to fairly and adequately protecting the interests of the Class, and has retained competent counsel experienced in litigation of this nature.

31. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would (i) establish incompatible standards of conduct for Defendants, or (ii) as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, substantially impairing or impeding their ability to protect their interests. Moreover, Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### *InvenSense's Business*

32. InvenSense is a company that provides sensor solutions, particularly sensors that combine microelectromechanical systems ("MEMS") transducers, such as accelerometers, gyroscopes, barometers, compasses, and microphones, with proprietary algorithms, processors, and firmware that synthesize and calibrate sensor output data. The Company's solutions typically detect and track a host device's (e.g., smartphone) motion, direction, elevation, and what it is hearing. When an end user is holding or attached to such a host device, the Company's solutions can detect and track many types of data about the end user.

33. InvenSense was initially incorporated in California in June 2003, and it reincorporated in Delaware in October 2004. InvenSense completed its IPO in late 2011. Since then, the Company's revenue has increased sharply, and the Company continues to spend heavily on research and development, thus positioning the Company for sustained, long-term growth.

*The Acquisition*

34. On December 21, 2016, InvenSense and TDK announced that they had entered into the Merger Agreement, under which TDK, through Merger Sub, plans to acquire all of the outstanding shares of InvenSense common stock for $13.00 per share in cash. In total, the Acquisition implied an equity value of approximately $1.3 billion.

35. The Acquisition is conditioned on, among other things, approval by a majority of InvenSense's outstanding shares.

36. On February 3, 2017, InvenSense filed a preliminary proxy statement regarding the Acquisition. On March 10, 2017, InvenSense filed the Proxy Statement, which includes slight revisions from the preliminary February 3 version. The Proxy Statement contains a recommendation from the Board that InvenSense stockholders vote "FOR" the Acquisition.

37. Under Section 2.01(b) of the Merger Agreement, InvenSense, TDK, and Merger Sub have agreed that the Acquisition shall be completed "as soon as possible . . . ." When the Acquisition was announced, the parties stated the expected to complete the Acquisition by the end of September 2017.[2]

*The Proxy Statement Was Materially Misleading and Inadequate*

38. In violation of the federal securities laws, Defendants filed and/or authorized or caused the filing of a Proxy Statement that is materially false and misleading because it deceived InvenSense stockholders regarding the Company's intrinsic value and about whether Qatalyst's financial analyses support the Acquisition.

39. The Proxy Statement stated that the Board deemed the Acquisition "fair to and in the best interests of InvenSense and its stockholders . . . ." Elsewhere, the Proxy Statement similarly stated, the Board deterred that the Acquisition was "advisable" and that its terms "are fair to and in the best interests of the Company and [its] stockholders . . . ."

---

[2] To be precise, the press release stated that the parties expected to complete the Acquisition by the end of the second quarter of the fiscal year ending March 31, 2018. Based on previous years, the Company's second quarter ends around the end of each September.

-7-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

40. The Proxy Statement also contained a brief mention about the Board's decision to reject interest from another potential acquirer—referred to as "Company A"—wherein the Board purportedly rejected Company A's interest because it "was not in the best interest of InvenSense and its stockholders because it undervalued InvenSense relative to the value reflected in the long-range plan."

41. In short, the Proxy Statement makes clear that financial fairness was the key concern when purportedly assessing the "best interests" of InvenSense stockholders.

42. In support of its decision to enter into the Merger Agreement, the Board cited, among other things: "[t]he fact that in connection with the Merger, Qatalyst Partners rendered to our Board of Directors its oral opinion, subsequently confirmed in writing, that as of December 20, 2016 (Pacific Standard Time), and based upon and subject to the various assumptions, considerations, limitations and other matters set forth in the opinion, the $13.00 in cash per share merger consideration to be received by the holders of InvenSense common stock, other than TDK Corporation or any affiliate of TDK Corporation, pursuant to the Merger Agreement, was fair, from a financial point of view . . . ."

43. The Proxy Statement also states that, at a Board meeting held on December 20, 2016, just before approving the Merger Agreement, "[a] representative of Qatalyst Partners then reviewed with the Board of Directors Qatalyst Partners' financial analysis of the $13.00 per share cash consideration to be offered to InvenSense's stockholders in the proposed merger . . . ."

44. The Proxy Statement, in a section entitled "Opinion of InvenSense's Financial Advisor," contained on pages 63-69, purports to include a "brief summary of the material analyses performed by Qatalyst Partners in connection with its opinion" regarding the supposed fairness of the Acquisition.

45. Qatalyst's financial analyses included first and foremost Qatalyst's DCF analysis. The DCF analysis is widely recognized as the most important financial analysis—it is the only main analysis to yield information about a company's intrinsic value, whereas other analyses (e.g., comparable companies and precedent transactions analyses) are typically

-8-

unhelpful because no other company and no prior transaction are identical to the company and transaction being analyzed.

46. Qatalyst's DCF analysis implied a range of values for the Company's common stock of approximately $11.61 to $19.63 per share. The $13.00 per share Acquisition price is well below the midpoint and toward the bottom end of Catalyst's DCF range.

47. In performing its DCF analysis, Qatalyst took a questionable, unusual approach by, according to the Proxy Statement, "applying a dilution factor of approximately 19%, *as projected by the Company's management*, to reflect the dilution to current Company stockholders over the projection period due to the effect of future issuances by the Company of equity awards . . . ."

48. The problem with Qatalyst's approach is that the 19% dilution figure management fed Qatalyst was a sham assumption.

49. Since completing its IPO, InvenSense's share count has increased but only modestly, and the rate of increase has considerably slowed as the years have passed. The following table clearly demonstrates such conservative and slowing growth:

| Date | Shares Outstanding | Annualized Increase |
|---|---|---|
| 01/01/2012 | 79,441,000 | n/a |
| 06/05/2012 | 81,365,631 | 5.7% |
| 05/24/2013 | 85,149,740 | 4.8% |
| 05/07/2017 | 88,185,669 | 3.7% |
| 05/08/2015 | 91,029,000 | 3.2% |
| 05/06/2016 | 93,088,000 | 2.6% |
| 12/15/2016[3] | 94,415,309 | 2.3% |
| 01/13/2017 | 94,541,023 | 1.7% |

50. The Company also erred in providing a dilution figure based on "the effect of future issuances by the Company of equity awards . . . ." Indeed, regarding the Company's current and previous outstanding equity awards, InvenSense stated in its most recent annual report that the range of expected terms for options granted in 2014, 2015, and 2016 were 4.7, 4.5-5.0, and 5.1-5.3, respectively. Accordingly, options granted in the future through such "future issuances" would, on average, not be exercised during the projections period, thus

---

[3] This amount is provided in Section 4.05(a) of the Merger Agreement.

-9-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

undermining Qatalyst's basis for applying such a dilution factor in performing its DCF analysis.

51. Assuming a 19% dilution factor based on "future issuances" would also mark a drastic—and completely unexpected—departure from the Company's standard issuance practice.

52. Indeed, for the past several years, InvenSense granted both stock options and restricted stock units in amounts that nowhere approached the 19% that management instructed Qatalyst to use, and which Qatalyst blindly accepted.

53. Accordingly, for InvenSense's management to instruct Qatalyst to assume 19% dilution from "future issuances by the Company of equity awards" is objectively and subjectively unreasonable.

54. Qatalyst also applied an unreasonably broad range of discount rates (11.0% to 17.5%) and enterprise value to next-twelve months NOPAT multiples (10.5x to 15.5x) in ascertaining a terminal value for its DCF analysis. Indeed, because the midpoint of its DCF analysis was above the $13.00 per share Acquisition price *even after applying* the false dilution estimate, Qatalyst had to conjure such a broad range of implied values in order to encompass the Acquisition price.

55. In order to stretch the valuation range broad enough, Qatalyst applied an extraordinarily broad range of discount rates (representing a whopping 60% spread) and an overbroad and questionable range of NOPAT multiples (representing a nearly 50% spread and featuring almost none of the companies which InvenSense has itself previously deemed as peers).

56. In short, Qatalyst is complicit in helping the Board to deceive InvenSense stockholders as to the fairness of the Acquisition.

57. As a result of management's specious dilution estimate, coupled with Qatalyst's clever financial engineering (detailed herein), InvenSense stockholders were misled into believing that the Acquisition was fair when, in fact, it seriously undervalues the Company and its long-term prospects. Indeed, if InvenSense management had given Qatalyst a more

-10-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

reasonable dilution estimate, the resulting DCF analysis would have shown that the $13.00 per share Acquisition price, in fact, is *not* fair.

58. Moreover, insofar as the 19% could potentially be considered even remotely fair, the Proxy Statement fails to describe how, if at all, Qatalyst accounted for the difference in share issuances related to stock option grants, restricted stock grants, and purchases made through the 2013 Employee Stock Purchase Plan. More specifically, much of the equity that will be issued involves at least some degree of payment from InvenSense employees in order to acquire or exercise such equity rights. As a result, the Company would receive cash in connection with the eventual issuance of equity, and the Proxy Statement does not state whether or how Qatalyst accounted for the cash that would be received in connection with such equity issuances.

59. The Proxy Statement also fails to describe how the dilution estimate was applied across the projections period, including whether it was applied uniformly to every year, or pro rata to each of the years projected.

60. By failing to disclose this information, InvenSense stockholders are unable to evaluate the very financial analyses, which the Board relied upon in (i) deciding to enter into the Merger Agreement and (ii) recommend that InvenSense stockholders vote "FOR" the Acquisition.

## CAUSES OF ACTION

### COUNT I

**Against the Individual Defendants and InvenSense for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

61. Plaintiff repeats and realleges each allegation as if fully set forth herein.

62. SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, promulgated pursuant to Section 14(a) of the Securities Exchange Act of 1934, provides:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order

-11-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

> to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63. Defendants prepared, reviewed, and/or disseminated the false and misleading Proxy Statement, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

64. As stated herein, the Proxy Statement contained untrue statements of material facts and omitted to state material facts necessary to make the statements that were made not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, which the Proxy Statement is an essential link in the consummation of the Acquisition. Defendants have also failed to correct the Proxy Statement, and the failure to update and/or correct false statements is also a violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

65. The written communications made by Defendants described herein constitute violations of Rule 14a-9 and Section 14(a) because such communications are materially false or misleading.

66. As a direct result of Defendants' negligent preparation, review, and dissemination of the false or misleading Proxy Statement, Plaintiff will be induced to vote his shares and accept inadequate consideration of $13.00 per share in connection with the Acquisition.

67. The false or misleading Proxy Statement used to obtain stockholder approval of the Acquisition deprived Plaintiff and the Class of their right to a fully informed stockholder vote in connection therewith and the full and fair value for their InvenSense shares.

68. At all times relevant to the dissemination of the materially false or misleading Proxy Statement, Defendants were aware of or had access to the true facts concerning InvenSense's true value, which was far greater than the $13.00 per share InvenSense's stockholders stand to receive.

69. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Acquisition. In addition, a reasonable investor would view a full and accurate disclosure as having significantly altered the "total mix" of information made available in the Proxy Statement and in other information reasonably available to stockholders.

70. By reason of the misconduct detailed herein, Defendants are liable pursuant to Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

**COUNT II**

**Against the Individual Defendants and the TDK Defendants
for Violations of Section 20(a) of the Exchange Act**

71. Plaintiff repeats and realleges each allegation set forth herein.

72. The Individual Defendants acted as controlling persons of InvenSense within the meaning of § 20(a) of the Exchange Act.

(a) By virtue of their positions as officers and/or directors and/or controlling stockholders of InvenSense, and/or their participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

(b) Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

-13-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

    (c)    The Proxy Statement details the Individual Defendants' involvement in negotiating, reviewing, and approving the Merger Agreement and preparation of the Proxy Statement.

    (d)    The Proxy Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Acquisition. They were thus directly involved in the making of this document.

    (e)    By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

73.    TDK and Merger Sub are controlling persons of InvenSense and the Individual Defendants within the meaning of Section 20(a) of the Exchange Act. By reason of their contractual obligations with InvenSense and certain of the Individual Defendants, the TDK Defendants possessed control over InvenSense and the Individual Defendants.

    (a)    As a condition of the Merger Agreement, and pursuant to the Support Agreements, defendant Abdi irrevocably appointed the TDK Defendants as his proxy to vote his shares of the Company's common stock in favor of the Acquisition.

    (b)    InvenSense and the Individual Defendants were required under the Merger Agreement to refrain from changing the operation of the Company's business or engaging in a variety of activities without the express written consent of the TDK Defendants.

    (c)    Pursuant to the Merger Agreement, InvenSense was not permitted to change the record date for the stockholder meeting on the Acquisition without the TDK Defendants' prior written consent.

    (d)    Pursuant to the Merger Agreement, InvenSense had to prepare the Proxy Statement in consultation with the TDK Defendants. Moreover, the Company was obligated to give the TDK Defendants the opportunity to comment on the Proxy Statement, and InvenSense had to consider any comments made by Parent concerning the Proxy Statement. The

Merger Agreement also required InvenSense to involve the TDK Defendants in any communications it might have with the SEC concerning the Proxy Statement.

(e) By reason of such conduct, the TDK Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Acquisition;

C. In the event Defendants consummate the Acquisition, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: March 23, 2017        JOHNSON & WEAVER, LLP

　　　　　　　　　　　　　　　　　*s/ Frank J. Johnson*
　　　　　　　　　　　　　　　　　FRANK J. JOHNSON

　　　　　　　　　　　　　　　　　600 West Broadway, Suite 1540
　　　　　　　　　　　　　　　　　San Diego, CA 92101
　　　　　　　　　　　　　　　　　Telephone: (619) 230-0063
　　　　　　　　　　　　　　　　　Facsimile: (619) 255-1856

-15-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY 10016
Telephone: (212) 802-1486
Facsimile: (212) 602-1592

*Attorneys for Plaintiff*

-16-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## CERTIFICATION PURSUANT TO THE FEDERAL SECURITIES LAWS

George E Rollins ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff holds  500  shares of InvenSense, Inc. stock as of the date of the certification and has been a holder of InvenSense, Inc. at all relevant times.

5. Plaintiff has not sought to serve or served as a representative party in a class action filed under the federal securities laws within the three-year period prior to the date of this Certification.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 22 day of March, 2017.

_____
George E Rollins